IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN W.,[1]

     Plaintiff,

v.                                 Case No. 1:25-cv-00013-WJ-LF

FRANK BISIGNANO,[2] Commissioner
of the Social Security Administration,

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Steven W.'s Motion to Reverse or Remand (Doc. 14), which was fully briefed on July 7, 2025. Doc. 20 at 1. Senior United States District Judge William Johnson referred this case to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3), and *Virginia Beach Federal Savings & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 9 at 1. Having read the briefing, meticulously reviewed the entire record, and being fully advised in the premises, I recommend that the Court find that the Administrative Law Judge ("ALJ") reversibly erred in analyzing Plaintiff's medically determinable mental impairments. I therefore

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Frank Bisignano was sworn in as the Commissioner of the Social Security Administration on May 7, 2025, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d); 42 U.S.C. § 405(g) (stating that such an action "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

recommend that the Court grant Plaintiff's motion and remand this matter to the Commissioner for further proceedings consistent with the Court's opinion.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation modified) (quotation omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)). While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent

[the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th

Cir. 2004)).

### I.        Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

*see* 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see Grogan*, 399 F.3d at 1261.  If the

claimant cannot show that his or her impairment meets or equals a Listing but proves that he or

she is unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the

---

[4] *See generally* 20 C.F.R. pt. 404, subpt. P, app. 1.

national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience.  *Grogan*, 399 F.3d at 1261.

## II.        Background and Procedural History

Plaintiff was 53 years old at the time of the alleged disability onset date and has at least a

high school education.  AR 92, 94.[5]  Plaintiff has worked as a waiter.  AR 20.  Plaintiff filed an

application for Disability Insurance Benefits ("DIB") on June 14, 2021, alleging disability since

May 30, 2019, due to deafness in his left ear, vertigo, seizures, anxiety, panic attacks, dental

problems, pain in both hands, back pain, knee pain, impingement in arm, and plantar fasciitis.

AR 10, 92.  The Social Security Administration ("SSA") denied his claim initially and on

reconsideration.  AR 10.  Plaintiff requested a hearing before an Administrative Law Judge

("ALJ").  *Id.*  On March 27, 2024, ALJ Rebecca Sartor held a telephone hearing.  *Id.*  ALJ Sartor

issued her unfavorable decision on May 30, 2024.  AR 7.

The ALJ found that Plaintiff met the insured status requirements of the Social Security

Act through September 30, 2020.  AR 12.  At step one, the ALJ found that Plaintiff had not

engaged in substantial, gainful activity from May 30, 2019, his alleged onset date, to September

30, 2020.  *Id.*  At step two, the ALJ found that Plaintiff's degenerative disc disease, gout, trigger

finger, seizure disorder, and vertigo were severe impairments.  *Id.*  The ALJ also found that

Plaintiff suffered from three medically determinable mental impairments: anxiety with panic

disorder, bipolar disorder, and polysubstance abuse. AR 13.  But because the ALJ found that

Plaintiff only had mild limitations in his mental functioning, the ALJ found Plaintiff's mental

impairment non-severe.  AR 13–14.  At step three, the ALJ found that none of Plaintiff's

---

[5] Document 11 and its eight attachments are the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

impairments, alone or in combination, met or medically equaled a Listing.  AR 15.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC.  *Id.* The ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except the following.  He can perform frequent handling and fingering bilaterally. The claimant must avoid all practicable exposure to hazards."  *Id.*

At step four, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a waiter.  AR 20.  The ALJ thus found Plaintiff not disabled at step four and did not move on to step five.  *Id.*  Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  AR 1.  On November 29, 2024, the Appeals Council denied the request for review.  *Id.*  Plaintiff timely filed his appeal to this Court on October 21, 2024.  *See* Doc. 1.[6]

### III.    Plaintiff's Claims

Plaintiff raises two arguments for reversing and remanding this matter.  Plaintiff first argues that the ALJ failed to consider pertinent medical records pertaining to Plaintiff's mental health treatment at step two and then failed to discuss Plaintiff's medically determinable mental impairments when assessing Plaintiff's RFC at step four.  Doc. 14 at 17–21.  Plaintiff also argues that the ALJ failed to adequately consider a 2021 MRI record when assessing Plaintiff's back pain and difficulty sitting and standing.  *Id.* at 21–23.  Because I agree that the ALJ failed to consider pertinent mental health treatment records at step two, then failed to discuss Plaintiff's mental impairments at step four, I recommend remand.  I do not address Plaintiff's second claim, as it may be affected by the ALJ's treatment of this case on remand.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 1–3.

### IV.  Analysis

A.  <u>The ALJ erred at step two in not setting out specific findings and reasons for accepting or rejecting evidence of Plaintiff's mental health issues</u>.

Plaintiff argues that the ALJ failed at step two to consider evidence regarding Plaintiff's mental health, including 2014 records of Plaintiff's mental health treatment and a record indicating that Plaintiff was treated for bipolar disorder on February 11, 2020.  Doc. 14 at 17–18. The Commissioner responds that the ALJ did explicitly consider Plaintiff's 2014 records in her written decision, and that the ALJ is not required to discuss a single treatment note where the ALJ has otherwise fairly summarized the longitudinal record.  Doc. 18 at 7–8.

As explained above, the Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied.  *Maes*, 522 F.3d at 1096.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  But "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects."  *Id.* at 1010.  Remand is appropriate where the ALJ has not set out specific findings and reasons for accepting or rejecting evidence.  *See id.*

Regarding Plaintiff's 2014 records of mental health treatment, the ALJ explicitly referred to those records in her written opinion.  During her step two analysis, the ALJ wrote that, "[p]rior to the alleged onset date, he had a history of mental health issues" before citing to the exhibits containing those 2014 records.  AR 13.  The ALJ then discounted these older records because Plaintiff "has not undergone treatment for these issues since the alleged date of disability onset, suggesting little impact on his ability to function as a result of these conditions."  *Id.*

6

The ALJ's finding that Plaintiff sought no mental treatment since his alleged disability onset date is simply incorrect.  Plaintiff correctly notes that the record contains a treatment note from February 11, 2020, when Plaintiff was assessed as suffering from "bipolar disorder with mania: delusional, expansive, emotionally labile, tangential, sleeplessness." AR 843.  The note also describes Plaintiff as "[c]ooperative, labile, expansive, tangential mood and effect, delusional." *Id.*  The record notes that Plaintiff "report[ed] history of bipolar disorder with presentation suggesting mania," and the note's author "[d]iscussed [Plaintiff's] case with Psych ER attending who agreed with initiation of quetiapine at bedtime to help with insomnia and psychosis." AR 844.  Other evidence in the record refers to this diagnosis and Plaintiff's mental health issues after his alleged disability onset date.  *See* AR 1015 (describing the February 2020 note and treatment and ascribing some sleeplessness to bipolar mania), 1424–25 (noting that Plaintiff has a past medical history of anxiety and bipolar disorder and noting his use of quetiapine), 1685 (noting that, while Plaintiff's "[m]ental health is better than on" a certain medication, "he still has some 'eccentric ideas,'" and "feels manic most of the time").  The ALJ does not discuss or reference these records in her decision.

While I agree with the Commissioner that "[t]here is obviously no requirement that the ALJ reference everything in the administrative record," Doc. 18 at 8 (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010)), the ALJ "must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects," *Clifton*, 79 F.3d at 1010.  Because the ALJ never referenced the February 11, 2020, treatment note in her decision, it is not apparent whether she considered it.  Instead, the ALJ's finding that Plaintiff did not undergo mental health treatment after his alleged onset date is undercut by record evidence that Plaintiff was diagnosed with bipolar disorder, was prescribed medication to treat that

disorder after his alleged disability onset date, and took that medication after it was prescribed. *Compare* AR 13 *with* AR 843–44, 1424–25, 1685. If the ALJ considered this evidence at step two, she either chose not to rely on it or she rejected it, but she did not explain why. *See* AR 13. The Commissioner argues that the ALJ omitted the February 11, 2020, treatment note from her decision because it was a single note and because other medical evidence suggested that Plaintiff's mental health issues were a side effect of his antiseizure medication. *See* Doc. 18 at 8–10. But the ALJ did not articulate this reasoning, and neither the Court nor the Commissioner may infer that reasoning post hoc. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (noting that a court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

I therefore recommend that the Court find that the ALJ erred at step two in not discussing evidence in the record that undercut her finding that Plaintiff sought no mental health treatment after his alleged disability onset date.

> B.    <u>The ALJ erred at step four in failing to include, or at least explain the omission of, work-related limitations related to Plaintiff's mental impairments in Plaintiff's RFC.</u>

Plaintiff further argues that the ALJ erred at step four in omitting any discussion of Plaintiff's medically determinable mental impairments when assessing his RFC, despite the ALJ finding at step two that Plaintiff suffered from anxiety with panic disorder, bipolar disorder, and polysubstance abuse, with mild limitations in all four broad areas of mental functioning. Doc. 14 at 18–21. The Commissioner responds that the ALJ was not required to discuss Plaintiff's mental limitations at step four, both because the ALJ found those limitations to be only mild and because the ALJ previously described those limitations in detail at step two. Doc. 18 at 11–13.

This claim of error involves the different methods by which an ALJ must analyze mental impairments at steps two and four.  At step two, an ALJ must determine whether the claimant has any medically determinable impairments or combination of impairments, and if so, whether they are "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  An ALJ uses a "special technique" to evaluate the severity of mental impairments at step two.  *Martinez v. O'Malley*, No. 1:23-cv-00093-MLG-KK, 2024 WL 808868, at *8 (D.N.M. Feb. 27, 2024), *proposed findings and recommendations adopted by presiding judge*, 2024 WL 5715912 (D.N.M. Mar. 13, 2024).  This technique requires the ALJ to "rate the degree of functional limitation resulting from" any medically determinable mental impairment in "four broad functional areas."  20 C.F.R. § 404.1520a(b)–(c).  Limitations in each area must be rated as "[n]one, mild, moderate, marked, [or] extreme," and if the ALJ rates the limitation as "none" or "mild," the ALJ generally concludes that the impairment is not severe.  20 C.F.R. § 404.1520a(c)(4), (d)(1).

While a claimant must have at least one severe impairment or combination of impairments for the ALJ to proceed past step two, the ALJ must consider *all* of the claimant's medically determinable impairments in formulating the RFC at step four.  *Martinez*, 2024 WL 808868, at *8; 20 C.F.R. § 404.1545(a)(2) (noting that the ALJ will consider all medically determinable impairments, even those that are not severe, in formulating the RFC).  The criteria used to assess mental impairments at step two are "not an RFC assessment" and are insufficient to satisfy the ALJ's duties at step four.  *Martinez*, 2024 WL 808868, at *8–9 (quoting SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996)).  Indeed, "the Tenth Circuit has held that, when an ALJ finds one or more mild restrictions in a claimant's four broad areas of mental functioning due to a non-severe mental impairment at step two, [s]he must further analyze the impairment's work-related impact in formulating the claimant's RFC at step four."  *Martinez*, 2024 WL

808868, at *9 (citing *Wells v. Colvin*, 727 F.3d 1061, 1064–65, 1068–69 (10th Cir. 2013); *McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011)).

The Commissioner first argues that the ALJ was not required to further discuss Plaintiff's mental impairments at step four because she already discussed them in sufficient detail at step two. Doc. 18 at 11–12. While it generally is true that an ALJ's deficient analysis in one area of her decision may be salvaged by a more developed analysis in another area, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 730, 734–35 (10th Cir. 2005), the Commissioner's argument is undermined by the ALJ's own statements at step two. The ALJ acknowledged that her step two assessment of Plaintiff's mental limitations is "not a residual functional capacity assessment," and that the "mental RFC used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions." AR 14. Yet the ALJ did not analyze Plaintiff's mental limitations further at step four. *See* AR 15–20. The Commissioner cites the Tenth Circuit's decision in *Bradley v. Colvin* for support that no further analysis was required at step four, but *Bradley* involved physical impairments to the claimant's hand that had been resolved. *See* 643 F. App'x 674, 676 (10th Cir. 2016) (finding that the ALJ adequately discussed Plaintiff's non-severe hand impairments in determining the claimant's RFC). But as the ALJ acknowledged, Plaintiff here continued to suffer from mental impairments that caused at least mild limitations in Plaintiff's mental functioning, which required a more a more detailed analysis at step four than at step two. AR 13; SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

The Commissioner next argues that the ALJ was not required to include any mental limitations in Plaintiff's RFC because the ALJ had previously determined that Plaintiff's mental limitations in all four areas of functioning were only mild. Doc. 18 at 12–13. While it is true that non-severe mental impairments assessed in step two do "not necessarily translate to a work-

10

related functional limitation for the purposes of the RFC assessment," *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013), "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five," *Wells*, 727 F.3d at 1068–69. Rather, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts . . . and nonmedical evidence." *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)) (emphasis in original). An ALJ's failure to make specific findings at step four regarding what, if any, work-related limitations result from a claimant's non-severe mental impairments is reversible error. *See McFerran*, 437 F. App'x at 638 (remanding where the ALJ did not explain why he excluded any work-related limitations resulting from a claimant's non-severe mental impairments); *Farill v. Astrue*, 486 F. App'x 711, 712–13 (10th Cir. 2012) (finding error where "the RFC did not include any mental limitations, and the ALJ never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations").

Here, the ALJ dedicated several pages to justifying her assessment of Plaintiff's RFC, discussing the medical evidence in detail and with specific citations. *See* AR 17–20. But this discussion focused exclusively on Plaintiff's physical impairments. *See id.* The RFC does not include any limitations related to the mild mental limitations that the ALJ identified at step two, nor does the ALJ ever explain why such limitations were omitted. The ALJ only states, during her step two analysis, that "the following RFC assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," AR 14, but "the RFC did not include any mental limitations, and the ALJ never explained why [s]he chose not to include any mental limitations in the RFC, despite [her] previous assessment of mild limitations," *Farill*,

486 F. App'x at 713.  The cases that the Commissioner cites for support all involve decisions in which the ALJ either included at least some mental limitations in a claimant's RFC or some discussion of the claimant's mental limitations at step four.  *See Bales v. Colvin*, 576 F. App'x 792, 797–98 (10th Cir. 2014) (discussing how, in assessing a claimant's RFC, the ALJ relied on mental RFC opinions in the record and incorporated the most restrictive limitations suggested); *Beasely*, 520 F. App'x at 754–55 (noting that "the ALJ found that, in spite of any limitations in social functioning," the claimant "could respond appropriately to supervision, co-workers, the general public, and usual work situations") (internal quotations omitted)); *Vigil v. Colvin*, 805 F.3d 1199, 1203–04 (10th Cir. 2015) (finding that the ALJ adequately accounted for moderate mental limitations in formulating a claimant's RFC by limiting the skill level of the claimant's work); *E.R.D. v. O'Malley*, No. 23-cv-02155-LTB, 2024 WL 3276158, at *6–*7 (D. Colo. July 2, 2024) (noting that, when assessing a claimant's RFC, the ALJ made specific findings as to the claimant's mental limitations and that the RFC reflected those limitations); *J.M. v. Comm'r Soc. Sec. Admin.*, No. 24-cv-00856-KAS, 2024 WL 4901878, at *5 (D. Colo. Nov. 27, 2024) (noting that "the ALJ explained that she had considered Plaintiff's nonsevere mental impairments in assessing his RFC even though she did not discuss them in detail at this step").

To be clear, the error here is not in the ALJ's failure to include work-related limitations related to Plaintiff's mental impairments in the RFC, but rather in the ALJ's failure to explain their omission.  *See Martinez*, 2024 WL 808868, at *12.  While the ALJ did perform a step two analysis of Plaintiff's mental impairments, the step two analysis is not an RFC assessment and cannot substitute for the more detailed step four analysis.  *See id.* at *8–*9; *Farill*, 486 F. App'x at 713; AR 14.  I therefore recommend that the Court find that the ALJ erred at step four.

C.    The ALJ's errors were not harmless.

When an ALJ errs in her analysis, the Tenth Circuit applies "harmless error analysis cautiously." *Fischer-Ross*, 431 F.3d at 733. "[H]armless error analysis nevertheless may be appropriate to supply a missing dispositive finding where, based on material the ALJ did at least consider (just not properly)," a reviewing court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733–34 (citation modified) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Courts still must be careful not "to supply a missing finding for the ALJ on legal or evidentiary matters that [she] did not consider because it risks violating the general rule against post hoc justification of administrative action." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006) (internal quotations omitted). I recommend that the Court decline to supply the missing analysis here.

First, the errors here are not "based on material the ALJ did at least consider (just not properly)." *Fischer-Ross*, 431 F.3d at 733 (quoting *Allen*, 357 F.3d at 1145). There is no indication at steps two or four that the ALJ considered the February 11, 2020, treatment note relating to Plaintiff's bipolar disorder. The Court therefore cannot determine that no reasonable administrative factfinder, considering that evidence and following the correct analysis, would not have assessed greater than mild limitations in one or more of Plaintiff's four broad areas of mental functioning. *See id.* A finding of greater mental limitations at step two could, in turn, affect the assessment of Plaintiff's RFC at step four and could "be critical to the outcome of [Plaintiff's] claim, by preventing [him] from performing past relevant work or narrowing the range of other work [he] can still do." *Martinez*, 2024 WL 808868, at *14 (internal quotations omitted).

13

Likewise, the omission of any discussion of Plaintiff's mental impairments at step four, despite the ALJ's prior findings that Plaintiff was mildly limited in all four broad areas of mental functioning, was not harmless.  In *Alvey v. Colvin*, 536 F. App'x 792, 794–95 (10th Cir. 2013), the Tenth Circuit found an ALJ's similarly deficient analysis at step four to be harmless error because "there [were] no records indicating treatment by a mental practitioner," the existing records "contain[ed] few mentions of mental issues," and the medical opinions "do not support any mental functional limitations."  Here, by contrast, there is record evidence of Plaintiff's mental health treatment and numerous references to Plaintiff's mental health issues.  *See* AR 361, 363, 370, 373, 381, 490–99, 842–44, 1014–17, 1051, 1199.  The *Alvey* Court also found no fault in the ALJ's step two analysis.  536 F. App'x at 793.  Here, as described above, the step two analysis of Plaintiff's mental impairments was deficient in its omission of any consideration of the February 11, 2022, treatment note.

This is not to suggest that the above evidence would require a reasonable ALJ to find that Plaintiff has any work-related mental limitations, or that any mental limitations are significant. *See Martinez*, 2024 WL 808868, at *14.  But in light of this record, I cannot "confidently say that no reasonable administrative factfinder, following the correct analysis" would not have found some degree of work-related mental limitations.  *Allen*, 357 F.3d at 1145.  Further,

> even if these limitations do not significantly limit [Plaintiff's] ability to do basic work activities, they may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of [his] claim, by preventing [him] from performing past relevant work or narrowing the range of other work [he can] still do.

*Martinez*, 2024 WL 808868, at *14 (citation modified) (internal quotations omitted).  I therefore recommend that the Court find that the ALJ's errors at steps two and four were not harmless.

## V.    Conclusion

For the foregoing reasons, I recommend that the Court find that the ALJ erred in analyzing Plaintiff's medically determinable mental impairments at both steps two and four of the sequential analysis, and that these errors were not harmless.  I therefore recommend that the Court GRANT Plaintiff's Motion to Reverse or Remand (Doc. 14) and remand this matter to the Commissioner for further proceedings in accordance with the Court's order.  The Court need not address Plaintiff's second claim of error, as it may be affected by the ALJ's treatment of this case on remand.  *See Watkins*, 350 F.3d at 1299.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id*.  In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge

15